The Honorable Sandy Praeger State Senator, 2nd District 3601 Quail Creek Court Lawrence, Kansas 66047
Dear Senator Praeger:
As Chair of the Senate Public Health and Welfare Committee, you request our interpretation of K.S.A. 1996 Supp. 65-1,108, concerning laboratories for human drug testing. Specifically, you ask whether an employer using on-site drug testing kits constitutes a "person" or "laboratory" within the meaning of K.S.A. 1996 Supp. 65-1,108, and whether employers who use on-site drug testing kits for employee management purposes "perform tests" in violation of the statute. K.S.A. 1996 Supp. 65-1,108, which prohibits uncertified laboratories from performing certain tests, states in part:
 "It shall be unlawful for any person or laboratory to perform tests to evaluate biological specimens for the presence of controlled substances included in schedule I or II of the uniform controlled substances act or metabolites thereof, unless the laboratory in which such tests are performed has been approved by the secretary of health and environment to perform such tests. Any person violating any of the provisions of this section shall be deemed guilty of a class B misdemeanor. . . ."
You ask whether an employer is a "person" as that term is used in K.S.A. 1996 Supp. 65-1,108. In determining the meaning of a statute, the fundamental rule is that the intent of the Legislature controls when that intent can be ascertained. In order to determine legislative intent in situations where the language is susceptible to more than one meaning, courts are required to consider and construe all parts of an act together in pari materia. Aves v. Shah, 258 Kan. 506, 513 (1995).
 "In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested." State v. Gonzales, 255 Kan. 243, 249
(1994), quoting Brown v. Keill, 224 Kan. 195, Syl. ¶ 3 (1978)
"Person" is not defined in the statute, however the word "person(s)" was included in the original version of the statute. K.S.A. 1996 Supp. 65-1,108 was enacted in 1947 as part of an act that established an advisory laboratory commission to the State Board of Health.
The act provided for the regulation of laboratories and laboratory personnel who perform serology tests. The entire act is limited to regulating laboratories and the persons who perform tests in those laboratories. L. 1947, Ch. 330, § 4. The original statute declared it unlawful for "any person, firm, corporation, city or county to perform serological tests in connection with pre-marital or pre-natal tests unless the laboratory in which such tests are performed shall have been registered with, and approved, by the state board of health and unless all persons employed therein who perform technical laboratory services shall have been approved by the state board of health." L. 1947, Ch. 330, § 4. (Emphasis added.)
In 1988 the statute was amended to include testing for controlled substances as follows:
 "It shall be unlawful for any person or laboratory to perform . . . tests for controlled substances included in schedule I or II of the uniform controlled substance act unless the laboratory in which such tests are performed has been approved by the secretary of health and environment to perform such tests. . . ." L. 1988, Ch. 233, § 2.
Testimony by the Kansas Department of Health and Environment (KDHE) at the hearing on this bill in 1988 explained that the amendments represented "a change in the focus of approval from persons performing the tests, to a more appropriate laboratory approval approach." The testimony concluded that the amendments were needed because Kansas did not have a comprehensive state laboratory licensure statute for laboratories not covered by hospital licensure. During the legislative hearings there was no mention of controlling on-site testing by employers. The hearing discussions focused on the change from licensure of persons performing tests to licensure of the laboratory where the tests are performed. See Minutes, House Committee on Public Health and Welfare, February 11, 1988; Minutes, Senate Committee on Public Health and Welfare, March 18, 1988.
K.S.A. 1996 Supp. 65-1,107 gives the Secretary of KDHE authority to adopt rules and regulations establishing "[t]he procedures and qualifications of authorized personnel, instruments and methods used in laboratories performing tests for the presence of controlled substances. . . ." There is no authority given to the Secretary to regulate persons other than laboratory personnel. K.A.R. 28-33-12 is the regulation implementing K.S.A. 1996 Supp. 65-1,107 and 65-1,108. The regulation relates to approval of laboratory facilities. It does not address tests conducted outside of a laboratory. We therefore opine that the word "person" as used in K.S.A. 1996 Supp. 65-1,108 includes only persons who perform tests in a laboratory.
You next ask whether an employer who uses on-site drug testing kits constitutes a "laboratory" within the meaning of K.S.A. 1996 Supp. 65-1,108. The statute specifies what is not a laboratory by listing five exemptions from the meaning of "laboratory," but it does not otherwise define the term "laboratory." The exemptions include doctors' offices, the forensics laboratory of the Kansas Bureau of Investigation, urinalysis tests conducted on inmates by personnel of the Kansas Department of Corrections or community corrections programs and tests conducted by personnel for alcohol and drug treatment programs licensed by the Secretary of Social and Rehabilitation Services. The statute does not mention or contain an exemption for on-site testing by employers.
In determining the meaning of words used in a statute, it is presumed that the Legislature intended to use words in their ordinary and common sense. Chavez v. Markham, 256 Kan. 859, Syl. ¶ 2 (1995). Because "laboratory" is not defined in either the statute or K.A.R. 28-33-12, we turn to the ordinary meaning of the word. "Laboratory" is generally defined as "a place equipped for experimental study in a science or for testing and analysis; broadly: a place providing opportunity for experimentation, observation, or practice in a field of study." Merriam Webster's Collegiate Dictionary, 650 (1996). In our opinion, places of employment do not fall within the definition of "laboratory" merely because drug test kits are used on the premises. Because an employer generally is neither a person nor a laboratory within the meaning of K.S.A. 1996 Supp. 65-1,108, it is not necessary to address the question of whether the use of on-site drug testing kits by an employer constitutes the performing of tests contemplated by the statute.
Finally, we note that it is significant that the statute carries a criminal penalty. Criminal statutes are to be strictly construed and a criminal statute should not be extended to embrace acts or conduct not clearly included within its prohibitions. State v. Doyen, 224 Kan. 482, Syl. ¶ 1 (1978). Although K.S.A. 1996 Supp. 65-1,108 does not define certain terms and therefore leaves them subject to interpretation, it does not clearly include any prohibition against employers using on-site drug testing kits. Therefore, we believe that an employer's use of on-site testing kits for controlled substances is not contemplated or prohibited by the statute.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm